IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOSE MONTANEZ,
    Plaintiff,

v.

MS. TRITT, *et al.*,
    Defendants.

Civil No. 3:14-cv-1362

(Judge Mariani)

## MEMORANDUM

Plaintiff, Jose Montanez, an inmate formerly confined at the Frackville State Correctional Institution, initiated the instant *pro se* civil rights action pursuant to 42 U.S.C. § 1983. (Doc. 1). The matter is proceeding *via* an amended complaint (Doc. 21), wherein Plaintiff names the following Defendants: Superintendent Brenda Tritt, Lieutenant Joseph Hannon, and Sergeant Reed. Before the Court is a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) by the Defendants. (Doc. 25). For the reasons set forth below, the motion will be granted in part and denied in part.

### I.   Standard of Review

A complaint must be dismissed under FED. R. CIV. P. 12(b)(6), if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). The plaintiff must aver "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct.

1937, 1949, 173 L. Ed. 2d 868 (2009).

"Though a complaint 'does not need detailed factual allegations, . . . a formulaic recitation of the elements of a cause of action will not do.'" *DelRio-Mocci v. Connolly Prop. Inc.*, 672 F.3d 241, 245 (3d Cir. 2012) (citing *Twombly*, 550 U.S. at 555). In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) (internal citations and quotation marks omitted). A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v. Abbott Laboratories*, 707 F.3d 223, 231, n.14 (3d Cir. 2013) (internal citations and quotation marks omitted).

> *Twombly* and *Iqbal* require [a district court] to take the following three steps to determine the sufficiency of a complaint: First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not show[n] - that the

2

pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks omitted). This "plausibility" determination will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*.

However, even "if a complaint is subject to Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

> [E]ven when plaintiff does not seek leave to amend his complaint after a defendant moves to dismiss it, unless the district court finds that amendment would be inequitable or futile, the court must inform the plaintiff that he or she has leave to amend the complaint within a set period of time.

*Id.*

## II. Allegations of the Amended Complaint

The allegations giving rise to Plaintiff's amended complaint stem from his incarceration at the Frackville State Correctional Institution. (Doc. 21). Plaintiff alleges that he began having trouble with his cellmate in May 2014. (*Id.* at 2). He therefore allegedly spoke to Defendant Hannon about the issue with his cellmate. (*Id.* at 3). Plaintiff claims that Defendant Hannon instructed him to first speak to his block sergeant. (*Id.*). Plaintiff asserts that he then spoke to Defendant Reed about the problems with his cellmate, and he requested to be moved out of the cell. (*Id.* at 9). Defendant Reed allegedly asked Plaintiff if there had been any physical altercations between he and his cellmate, to which Plaintiff responded there had not, however Plaintiff informed Defendant Reed that his cellmate

3

threatened him. (*Id.*). Defendant Reed allegedly told Plaintiff that "he didn't have time for this ... [h]e wasn't a babysitter" and Plaintiff should handle the situation himself. (*Id.*).

Plaintiff alleges that less than one week later, on May 29, 2014, he was in his cell watching his cellmate's television when the cellmate came in, turned off the television, and asked Plaintiff where the remote control was. (*Id.*). Plaintiff allegedly told his cellmate that he did not know where the remote control was, and that if he was going to act like that, then he should remove his television from Plaintiff's cabinet. (*Id.*). The cellmate allegedly refused to move the television. (*Id.*). Plaintiff asserts that he then moved the television off of his cabinet. (*Id.*). Plaintiff alleges that his cellmate then attacked him with an ink pen, stabbed him in the shoulder, and continued to attempt to stab him. (*Id.* at 9-10). Corrections officers quickly intervened and broke up the fight. (*Id.* at 10). Plaintiff alleges that he and his cellmate were handcuffed, pictures were taken of his injuries, and Plaintiff was sent to the medical department. (*Id.*).

Plaintiff alleges that when he was escorted to the medical department, Defendants Tritt and Hannon were outside his cell. (*Id.*). Defendant Hannon allegedly questioned Plaintiff about the altercation, and Defendant Tritt commented that Plaintiff's cellmate "can be annoying." (*Id.*).

Plaintiff claims that he was treated for his injuries, and interviewed by the security department about the incident. (*Id.* at 11). As a result of the incident, Plaintiff's cellmate

was allegedly sent to the restricted housing unit ("RHU"), and Plaintiff was sent back to his cell. (*Id.*).

A few days later, Plaintiff asserts that Defendant Hannon asked him if there would be any trouble when his, now former, cellmate was released from the RHU. (*Id.*). Plaintiff asserts that he expressed concern about remaining in the same facility with his former cellmate, to which Defendant Hannon advised him to just not start any fights. (*Id.*).

Plaintiff alleges that he wrote to Defendant Tritt expressing his concern about remaining in the same facility with his former cellmate. (*Id.*). Defendant Tritt allegedly did not respond. (*Id.*). Plaintiff therefore filed a grievance relating to the same. (*Id.*). Plaintiff claims that he never received a response, and the Grievance Coordinator stated that his grievance was never received. (*Id.*).

Plaintiff asserts that when his former cellmate was released from the RHU, he spread rumors that Plaintiff was a "snitch" and that he would kill him. (*Id.*). Plaintiff alleges that he wrote to Defendant Hannon about the alleged threats, but never received a response. (*Id.*). Plaintiff states that he "continues to live in fear" of his former cellmate and harassment by the correctional officers. (*Id.*).

Plaintiff filed the instant action seeking monetary relief, requesting that either he or his former cellmate be transferred to a different facility, and requesting that Defendants be reprimanded. (*Id.* at 3).

### III. Discussion

Section 1983 of Title 42 of the United States Code offers private citizens a cause of action for violations of federal law by state officials. See 42 U.S.C. § 1983. The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

Id.; see also Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996). To state a claim under § 1983, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988).

#### A. Failure to Protect Claim

"The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners against the 'unnecessary and wanton infliction of pain" and "impose[s] a duty upon prison officials to take reasonable measures 'to protect prisoners from violence at the hands of other prisoners.'" Hamilton v. Leavy, 117 F.3d 742, 746 (3d Cir. 1997) (citing Farmer v. Brennan, 511 U.S. 825, 832, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994); Whitley v. Albers,

475 U.S. 312, 319, 89 L. Ed. 2d 251, 106 S. Ct. 1078 (1986))).

"In order for a plaintiff to prove a constitutional violation in a failure-to-protect case, a claimant must demonstrate that: (1) he is 'incarcerated under conditions posing a substantial risk of serious harm;' and (2) the prison officials acted with 'deliberate indifference to his health and safety.'" *Ogden v. Mifflin County*, 2 008 U.S. Dist. LEXIS 81681, *9-10 (M.D. Pa. 2008) (citing *Farmer*, 511 U.S. at 834). A substantial risk of serious harm "may be established by much less than proof of a reign of violence and terror," but requires more than a single incident or isolated incidents. *See Riley v. Jeffes*, 777 F.2d 143, 147 (3d Cir. 1985). This does not require that an inmate must suffer an assault before obtaining relief. *Id.* Deliberate indifference requires that the prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *Heggenmiller v. Edna Mahan Corr. Inst.*, 128 Fed. Appx. 240, 245 (3d Cir. 2005). "The knowledge element of deliberate indifference is subjective, not objective knowledge, meaning that the official must actually be aware of the existence of the excessive risk; it is not sufficient that the official should have been aware." *Beers-Capitol v. Whetzel*, 256 F.3d 120, 133 (3d Cir. 2001). Finally, the inmate must show that "the official's deliberate indifference caused the harm." *Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2012).

With respect to Defendant Tritt, Plaintiff alleges that he saw her outside his cell *after* the alleged assault, and she commented about his cellmate, "[h]e can be annoying can't he?" (Doc. 21 at 10). Plaintiff further alleges that, *after* the alleged assault, he wrote to Defendant Tritt regarding his concerns of remaining in the same facility as his former cellmate. (*Id.*). Plaintiff fails to allege that Defendant Tritt knew of the existence of a substantial risk of harm, nor does Plaintiff even allege that Defendant Tritt should have known of a substantial risk of harm. There are simply no allegations in the amended complaint that Defendant Tritt knew of any threat to Plaintiff by his cellmate. Accordingly, Plaintiff's claim for failure to protect against Defendant Tritt will be dismissed. *See Calhoun v. Wagner*, 1997 U.S. Dist. LEXIS 10121, *20-21 (E.D. Pa. 1997) (dismissing the prisoner's failure to protect claim because knowledge cannot be imputed on the warden simply because he is in a supervisory position).

As to Defendant Hannon, Plaintiff claims that he informed this prison official that he was having "trouble" with his cellmate. (Doc. 21 at 3). In response, Defendant Hannon allegedly told Plaintiff to first report his concerns to the block sergeant. (*Id.*). Plaintiff further alleges that, after the alleged assault, Defendant Hannon questioned him about the incident. (*Id.* at 10). Subsequent to the incident, Plaintiff alleges that Defendant Hannon spoke to him about his former cellmate, and advised him "not to start any fights." (*Id.* at 11).

Regarding Defendant Reed, Plaintiff alleges that he informed Reed that he had

8

"issues" with his cellmate, he was threatened by his cellmate, and he requested to be transferred to a difference cell. (Doc. 21 at 9-10). Defendant Reed asked whether Plaintiff and his cellmate had been involved in any physical altercations, to which Plaintiff responded "no." (*Id.* at 9). In response, Defendant Reed allegedly told Plaintiff that "[h]e was not a babysitter", and that Plaintiff should handle the situation on his own. (*Id.*).

In the amended complaint, Plaintiff alleges that both Defendants Hannon and Reed were aware that Plaintiff had trouble with his cellmate. Moreover, Plaintiff states that Defendant Reed was actually aware that Plaintiff's cellmate had in fact threatened him. The factual allegations suggest that Defendants Hannon and Reed were actually aware of the risk posed by Plaintiff's placement in a cell with a troublesome inmate that threatened him. Despite this knowledge, Defendants Hannon and Reed failed to take any steps that would decrease the danger to Plaintiff, and this resulted in the attack and stabbing of Plaintiff by his cellmate. See *Farmer*, 511 U.S. at 837 (plaintiff must establish that the prison official acted with deliberate indifference, i.e., that the prison official knew of and disregarded an excessive risk to his safety). Accepting the allegations as true, and drawing all reasonable inferences in favor of Plaintiff, the Court finds that Plaintiff has stated a plausible claim that Defendants Hannon and Reed violated their constitutional duty to protect him from inmate violence. Accordingly, the motion to dismiss the claims against Defendants Hannon and Reed will be denied. See *Bistrian*, 696 F.3d at 368-71 (concluding that plaintiff stated

plausible failure to protect claim where he alleged, *inter alia*, that he advised prison officials that he had been threatened by a violent inmate who later attacked him).

### B. Official Capacity Claim

Defendants next argue that Plaintiff cannot recover damages against them in their official capacities as they are barred by the Eleventh Amendment. (Doc. 26 at 8-10). The Eleventh Amendment bars claims for monetary damages sought against a state official acting in his or her official capacity absent a valid abrogation by Congress or consent of the State. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985) (holding that "absent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court"). Congress did not validly abrogate or purport to abrogate the States' sovereign immunity against damages claims under section 1983, and the Commonwealth of Pennsylvania has not waived its Eleventh Amendment immunity. *See Hafer v. Melo*, 502 U.S. 21, 25-27 (1991) (suits against state officials acting in their official capacities are suits against the employing government agency, and as such, are barred by the Eleventh Amendment); 42 Pa.C.S.A. § 8521-22. Thus, Plaintiff cannot recover monetary damages against the Defendants in their official capacities, as such claims are barred by the Eleventh Amendment.

### IV. Conclusion

For the reasons set forth above, the Defendants' motion to dismiss will be granted in

part and denied in part. (Doc. 25).

An appropriate order shall issue.

Date: September 21st, 2015

Robert D. Mariani
United States District Judge