IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSE MONTANEZ, | Civil No. 3:14-cv-1362 |
| Plaintiff | (Judge Mariani) |
| v. | |
| SUPERINTENDENT MS. TRITT, et al., | |
| Defendants | |

**MEMORANDUM**

I. **Background**

Plaintiff, Jose Montanez, an inmate who, at all relevant times, was housed at the State Correctional Institution at Frackville, Pennsylvania ("SCI-Frackville")[1], initiated the instant action pursuant to 42 U.S.C. § 1983. (Doc. 1). The matter is proceeding *via* an amended complaint, wherein Montanez alleges that his Eighth Amendment rights were violated because Defendants failed to protect him from an assault by his former cellmate. (Doc. 21). The remaining Defendants are Lieutenant Hannon and Sergeant Reed. (*See* Docs. 49, 50). Currently pending before the Court is a motion for summary judgement filed by the remaining named Defendants. (Doc. 81). For the reasons provided herein, the Court will grant Defendants' motion.

II. **Summary Judgment Standard of Review**

---

[1] Montanez is currently incarcerated at the State Correctional Institution at Huntindgon, Pennsylvania. (Doc. 47).

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact." FED. R. CIV. P. 56(a). "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). Therefore, the non-moving party may not oppose summary judgment simply on the basis of the pleadings, or on conclusory statements that a factual issue exists. *Anderson*, 477 U.S. at 248. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(A)-(B). In evaluating whether summary judgment should be granted, "[t]he court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3). "Inferences should be drawn in the light most favorable to the

non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir.1992), *cert. denied* 507 U.S. 912 (1993).

However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007). If a party has carried its burden under the summary judgment rule,

> its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

*Id.* (internal quotations, citations, and alterations omitted).

### III. Statement of Undisputed Facts[2]

---

[2] Local Rule 56.1 requires that a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." LOCAL RULE OF COURT 56.1. A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues for trial. *See id.* Unless otherwise noted, the factual background herein derives from Defendants' Rule 56.1 statement of material facts. (Doc. 82). Montanez filed a brief in opposition to Defendants' motion, however he did not file a response to Defendants' statement of material facts. The Court accordingly deems the facts set forth by Defendants to be undisputed. *See* LOCAL RULE OF COURT 56.1.

Montanez alleges that in May 2014 he began having trouble with his cellmate at SCI-Frackville. (Doc. 82, ¶¶ 2, 5). On May 29, 2014, Montanez and his cellmate were involved in an altercation and the cellmate stabbed Montanez with an ink pen. (Doc. 84-1, pp. 6-7, Declaration of William Reed ("Reed Decl."), ¶ 8).

Montanez never spoke to Defendant Hannon about his concerns with his cellmate. (Doc. 82, ¶ 6; Doc. 84-1, pp. 4-5, Declaration of Joseph Hannon ("Hannon Decl."), ¶ 5).

In May 2014, prior to May 29, 2014, Montanez spoke with Defendant Reed about the issue with his cellmate and asked to be moved out of the cell. (Doc. 21, p. 9; Doc. 82, ¶ 7; Reed Decl., ¶ 5). Defendant Reed asked Montanez if there had been any physical altercations, to which Montanez responded that there had not been. (Doc. 21, p. 9; Doc. 82, ¶ 8). Montanez allegedly told Defendant Reed that he had "been threatened" by his cellmate, but provided no further detail. (Doc. 21, p. 9; Doc. 82, ¶ 9). Defendant Reed advised Montanez to attempt to find a cellmate on his own, and that the matter could be discussed with the Unit Manager. (Doc. 82, ¶ 10; Reed Decl., ¶ 6). This is the normal protocol followed at SCI-Frackville when cellmates are generally dissatisfied with each other. (Doc. 82, ¶ 11; Hannon Decl., ¶ 4; Doc. 84-1, pp. 8-9, Declaration of Michael Wenerowicz ("Wenerowicz Decl."), ¶ 8).

Most inmates prefer a single cell and will often stage fights with cellmates to attempt to obtain a single cell. (Doc. 82, ¶ 12; Wenerowicz Decl., ¶ 6). Inmate complaints about

4

cellmates are carefully scrutinized by the unit team. (Doc. 82, ¶ 13; Wenerowicz Decl., ¶ 7). Placing responsibility on the inmates to locate an amiable cellmate serves to foster their ability to solve problems, assume responsibility for themselves, and assist with their reentry. (Doc. 82, ¶ 14; Wenerowicz Decl., ¶ 9).

On May 29, 2014, Montanez and his cellmate were in an altercation regarding use of the cellmate's television. (Doc. 82, ¶ 15; Doc. 21, p. 9; Reed Decl., ¶ 8). During the altercation, Montanez's cellmate stabbed him in the shoulder with an ink pen. (Doc. 82, ¶ 15; Doc. 21, p. 9; Reed Decl., ¶ 8). This particular cellmate had never assaulted another inmate before this incident. (Doc. 82, ¶ 16).

Sergeant Weiner arrived on the scene and ordered the two inmates to stop fighting. (Doc. 82, ¶ 17; Doc. 21, p. 10). Sergeant Weiner told Montanez's cellmate to put the pen down, and he complied. (Doc. 82, ¶ 18; Doc. 21, p. 10). Sergeant Weiner called for backup and Sergeant Troutman arrived on the scene and ordered both inmates to cuff up. (Doc. 82, ¶ 19; Doc. 21, p. 10). Both inmates complied. (*Id.*).

A corrections officer photographed Montanez's wound. (Doc. 82, ¶ 20; Doc. 21, p. 10; Doc. 84-1, pp. 12-27, Declaration of Connie Green ("Green Decl."), Ex. A). Both inmates were escorted to the medical department and received treatment. (Doc. 82, ¶ 21; Doc. 84-1, p. 17). Montanez's cellmate was sent to the Restricted Housing Unit ("RHU"). (Doc. 82, ¶ 22; Doc. 21, p. 11). Montanez was not sent to the RHU. (*Id.*).

After Montanez's medical treatment was completed, Montanez reported to Security and was interviewed about the incident. (Doc. 82, ¶ 23; Doc. 21, p. 11). An Extraordinary Occurrence Report was completed and detailed the incident. (Doc. 82, ¶ 24; Green Decl., Ex. A).

Amanda West is employed by the Pennsylvania Department of Corrections as a Grievance Review Officer for the Secretary's Office of Inmate Grievances and Appeals ("SOIGA"). (Doc. 82, ¶ 27; Doc. 84-1, pp. 1-3, Declaration of Amanda West ("West Decl.") ¶ 1). As a Grievance Review Officer, her job responsibilities include answering grievance appeals at the final review stage. (Doc. 82, ¶ 28; West Decl., ¶ 3). The grievance system is governed by Department Policy DC-ADM 804, "Inmate Grievance System." (Doc. 82, ¶ 29; West Decl., ¶ 4). DC-ADM 804 is part of the Inmate Handbook distributed at reception to all inmates. (Doc. 82, ¶ 30; West Decl., ¶ 5). Step 1 is initiated at the facility where the event occurred and requires the inmate to submit a written grievance to the Facility Grievance Coordinator, who reviews it and assigns it to a Grievance Officer for investigation and response to the inmate. (Doc. 82, ¶ 32; West Decl., ¶ 6). If the inmate is dissatisfied with the response, the inmate can utilize Step 2, by appealing the grievance response to the Facility Manager or Superintendent of the facility where the grievance was filed. (Doc. 82, ¶ 33; West Decl. ¶ 6). If the inmate is dissatisfied with the Superintendent's response to the appeal of the grievance, the inmate may initiate Step 3, by appealing the grievance to the

6

SOIGA. (Doc. 82, ¶ 34; West Decl., ¶ 6). West reviewed the SOIGA's records concerning appeals received from Montanez from May 9, 2014 until June 30, 2014, searching for any grievances appealed to the SOIGA concerning the alleged attack on Montanez by his cellmate on May 29, 2014. (Doc. 82, ¶ 35; West Decl., ¶ 7). The SOIGA has no record of any appeals to final review by Montanez concerning this claim. (Doc. 82, ¶ 36; West Decl., ¶ 8).

## IV. Discussion

Section 1983 of Title 42 of the United States Code offers private citizens a cause of action for violations of federal law by state officials. *See* 42 U.S.C. § 1983. The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

*Id.*; *see also Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002); *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996). To state a claim under § 1983, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

## A. Exhaustion of Administrative Review

Under the Prison Litigation Reform Act of 1996 (the "PLRA"), a prisoner is required to pursue all avenues of relief available within the prison's grievance system before bringing a federal civil rights action. *See* 42 U.S.C. § 1997e(a); *Booth v. Churner*, 532 U.S. 731, 741 (2001). The exhaustion requirement is mandatory, *see Williams v. Beard*, 482 F.3d 637, 639 (3d Cir. 2007); *see also Booth*, 532 U.S. at 741 (holding that the exhaustion requirement of the PLRA applies to grievance procedures "regardless of the relief offered through administrative procedures"); *Nyhuis v. Reno*, 204 F.3d 65, 67 (3d Cir. 2000) (same), and "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

Courts have also imposed a procedural default component on the exhaustion requirement, holding that inmates must fully satisfy the administrative requirements of the inmate grievance process before proceeding into federal court. *Spruill v. Gillis*, 372 F.3d 218 (3d Cir. 2004). Inmates who fail to fully, or timely, complete the prison grievance process, or who fail to identify the named defendants, are barred from subsequently litigating claims in federal court. *See Spruill*, 372 F.3d 218. An "untimely or otherwise procedurally defective administrative grievance" does not satisfy the PLRA's exhaustion requirement. *Woodford v. Ngo*, 548 U.S. 81, 83-84 (2006). Thus, the PLRA mandates that

inmates "properly" exhaust administrative remedies before filing suit in federal court. *Id.* at 92.

The Pennsylvania Department of Corrections has an Inmate Grievance System which permits any inmate to seek review of problems that may arise during the course of confinement. *See* 37 PA. CODE § 93.9(a); PA. DEP'T OF CORR., No. DC-ADM 804; (*see also* Doc. 82, ¶¶ 29-31). After an attempt to resolve any problems informally, an inmate may submit a written grievance to the Facility's Grievance Coordinator for initial review. (Doc. 82, ¶ 32). This must occur within fifteen days after the events upon which the claims are based. *See* PA. DEP'T OF CORR., No. DC-ADM 804. Within fifteen days of an adverse decision by the Grievance Coordinator, an inmate may then appeal to the Facility Manager of the institution. *See* PA. DEP'T OF CORR., No. DC-ADM 804; (*see also* Doc. 82, ¶ 33). Thereafter, within fifteen days of an adverse decision by the Facility Manager, an inmate may file a final appeal to the Secretary's Office of Inmate Grievances and Appeals. PA. DEP'T OF CORR., No. DC-ADM 804; (*see also* Doc. 82, ¶ 34). *See Booth v. Churner*, 206 F.3d 289, 293 n. 2 (3d Cir. 2000) (outlining Pennsylvania's grievance review process). An appeal to final review cannot be completed unless an inmate complies with all established procedures. An inmate must exhaust all three levels of review and comply with all procedural requirements of the grievance review process in order to fully exhaust an issue. *See Booth*, 206 F.3d at 293 n. 2 (outlining Pennsylvania's grievance review process);

*Ingram v. SCI Camp Hill*, 448 F. App'x 275, 279 (3d Cir. 2011) (same).

Courts have invariably held that affirmative misconduct by prison officials, designed to impede or prevent an inmate's attempts to exhaust, may render administrative remedies unavailable. *See Todd v. Benning*, 173 F. App'x 980, 982-83 (3d Cir. 2006) (expressing approval of Eighth Circuit's holding in *Miller v. Norris*, 247 F.3d 736 (8th Cir. 2001)) that administrative remedies were not available where prison officials "purportedly prevented prisoner from employing the prison's grievance system"). Examples of affirmative misconduct on the part of prison officials include: (1) threatening a prisoner in an attempt to thwart the prisoner's attempts to exhaust, *see Harcum v. Shaffer*, No. 06-5326, 2007 WL 4167161, at *5 (E.D.Pa. Nov.21, 2007) (finding administrative remedies unavailable where prison officials threatened plaintiff with "opposition to his future prerelease application, parole, or outside work detail if he did not withdraw his grievance"), (2) refusing to provide appropriate grievance forms in response to inmate inquiries, *see Mitchell v. Horn*, 318 F3d 523, 529 (3d Cir. 2003), (3) advising an inmate that his or her situation does not require a grievance, *see Brown v. Croak*, 312 F.3d 109, 111 (3d Cir. 2002) (finding that administrative remedies were unavailable to plaintiff who had been advised by prison official that he must wait until the end of the prison's investigation before filing a grievance), and (4) failing to file or respond to a prisoner's grievances, *see Camp v. Brennan*, 219 F.3d 279, 280-81 (3d Cir. 2000) (finding that administrative remedies were unavailable where prison officials refused

10

to file plaintiff's grievances regarding their coworkers). The Third Circuit has stated that the institution "rendered its administrative remedies unavailable to [an inmate] when it failed to timely (by its own procedural rules) respond to his grievance and then repeatedly ignored his follow-up requests for a decision on his claim." *Robinson v. Superintendent Rockview SCI*, 831 F.3d 148, 154 (3d Cir. 2016).

In the case at bar, the records maintained by the Department of Corrections confirm that Montanez did not appeal any grievances to final review. (Doc. 82, ¶¶ 35-36; West Decl. ¶¶ 7-8). Defendants thus argue that Montanez's grievances were not exhausted, and all claims raised in connection therewith fail as a matter of law. (Doc. 83, pp. 5-6). In an attempt to excuse the exhaustion requirement, Montanez argues that Defendants were attempting to sabotage and frustrate his efforts to utilize the administrative review process. (Doc. 85, pp. 1-2; Doc. 87, pp. 2-3). Montanez submitted a copy of an inmate grievance regarding the May 29, 2014 altercation. (Doc. 85, p. 19). Montanez acknowledges that he never appealed this grievance, and asserts that he failed to appeal because he never received a response from the Grievance Coordinator, and thus could not comply with the applicable grievance procedure. (Doc. 87, pp. 2-3). Montanez submitted a response from prison officials stating that "there [is] no record of such grievance." (Doc. 85, p. 20). Based upon the evidence, the Court finds that Montanez may have been prevented or hindered from pursing administrative remedies. Consequently, the Court will deny Defendants'

motion for summary judgment based on failure to exhaust administrative remedies.

B.  **Failure to Protect Claim**

"The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners against the 'unnecessary and wanton infliction of pain" and "impose[s] a duty upon prison officials to take reasonable measures 'to protect prisoners from violence at the hands of other prisoners.'" *Hamilton v. Leavy*, 117 F.3d 742, 746 (3d Cir. 1997) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Whitley v. Albers*, 475 U.S. 312, 319, (1986)). "In order for a plaintiff to prove a constitutional violation in a failure-to-protect case, a claimant must demonstrate that: (1) he is 'incarcerated under conditions posing a substantial risk of serious harm;' and (2) the prison officials acted with 'deliberate indifference to his health and safety.'" *Ogden v. Mifflin County*, 2 008 U.S. Dist. LEXIS 81681, *9-10 (M.D. Pa. 2008) (citing *Farmer*, 511 U.S. at 834).

Montanez claims that Defendants failed to protect him from an assault by his former cellmate, inmate Scuderi. Defendants do not dispute that Montanez was injured, but assert that there is no evidence that they were actually aware of an excessive risk or were deliberately indifferent to the risk that Scuderi might assault Montanez.

1.  *Substantial Risk of Serious Harm*

Under the substantial risk prong of the inquiry, the Court must conduct an objective analysis. *See Farmer*, 511 U.S. at 834; *Hamilton*, 117 F.3d at 746. Thus, the inquiry

12

ordinarily will not be satisfied by evidence of a single incident or isolated incidents. *See Riley v. Jeffes*, 777 F.2d 143, 147 (3d Cir.1985). An objectively substantial risk of harm, however, may be "established by much less than proof of a reign of violence and terror." *Id.* (quoting *Shrader v. White*, 761 F.2d 975, 978 (4th Cir. 1985)).

Montanez failed to produce sufficient evidence that he was incarcerated under conditions posing a substantial risk of serious harm. To the contrary, until the incident in question, there is no indication that Montanez was ever assaulted while incarcerated at SCI-Frackville, and he acknowledges that he was never involved in a physical altercation with inmate Scuderi. Additionally, inmate Scuderi was never involved in any other prison fights. The evidence clearly shows that the assault of May 29, 2014 was an isolated incident, which is insufficient to establish constitutional liability. *See Riley*, 777 F.2d at 147 (noting that an isolated incident is insufficient evidence to establish an Eighth Amendment violation); *see also Williams v. Brown*, 2007 WL 2079935, at *3 (D.N.J. July 17, 2007) (finding that an inmate-on-inmate assault was "an isolated attack" when the aggressor inmate had never been in any fights with other prisoners and had no history of violence within the prison system).

  2. *Deliberate Indifference*

In cases of prisoner incarceration, Eighth Amendment liability attaches only to the "unnecessary and wanton infliction of pain." *Wilson v. Seiter*, 501 U.S. 294, 298, 111 S.Ct.

13

2321, 115 L.Ed.2d 271 (1991) (quoting *Whitley v. Albers*, 475 U.S. 312, 319, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986)). Thus, not only must a prisoner's conditions of incarceration be sufficiently serious, but prison officials must possess a "sufficiently culpable state of mind" in allowing such a condition to persist. *Beers-Capital v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001). Under this prong, the Court must analyze whether prison officials were, from a subjective standpoint, deliberately indifferent to an inmate's health or safety. *Farmer*, 511 U.S. at 834. Specifically, the Court must determine whether an official consciously knew of and disregarded an excessive risk to the prisoner's well being. *Farmer*, 511 U.S. at 839-44; *Hamilton*, 117 F.3d at 747. It is not enough to show that the prison official was "aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists." *Farmer*, 511 U.S. at 837. Rather, the prison official "must also draw the inference." *Id.* The official's actual knowledge may be proved by circumstantial evidence. *Beers-Capital*, 256 F.3d at 131.

The undisputed evidence reflects that Defendant Hannon recorded a statement from Montanez after the altercation. However, the parties dispute whether Montanez spoke to Defendant Hannon before the altercation occurred. Montanez asserts that he told Hannon he was having "trouble" with inmate Scuderi. (Doc. 21, p. 3). Montanez does not indicate that he informed Defendant Hannon of any perceived threat by inmate Scuderi. Even assuming that Montanez did tell Hannon of the "trouble" with his cellmate, there is

14

insufficient evidence showing that Hannon was deliberately indifferent to a substantial risk to Montanez.

Defendants do not dispute that Montanez informed Reed that he was having "issues" with inmate Scuderi and was threatened by him. (Doc. 83, pp. 8-9). Rather, Defendants assert that there is insufficient evidence as a matter of law that Reed failed to protect Montanez. (*Id.*).

An inmate cannot establish sufficient subjective awareness of a serious risk of harm to satisfy an Eighth Amendment claim by simply asserting that staff were informed that an inmate was not getting along with his cellmate. See *O'Connell v. Williams*, 241 F. App'x 55, 58 (3d Cir. 2007) (plaintiff's repeated requests for a new cell and allegations that he and his cellmate were "not getting along" were insufficient to establish that defendant was aware of a serious threat to plaintiff's safety). Instead, "[a]ctual knowledge can be proven circumstantially [only] where the general danger was obvious; that is, where 'a substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past.'" *Counterman v. Warren County Correctional Facility*, 176 F. App'x 234, 238 (3d Cir. 2006) (quoting *Farmer*, 511 U.S. at 842-43).

In cases involving an inmate-on-inmate attack, the Third Circuit has routinely found that, under the standards of a failure to protect claim, prison officials were not aware of a serious risk where there were no previous incidents of violence between the inmates, even

15

if officials had notice of threats or potential for violence prior to the attack. *See Bizzell v. Tennis*, 447 F. App'x 112 (3d Cir. 2011) (affirming grant of summary judgment to defendants as to plaintiff's failure to protect claim because lack of prior fighting between the two inmates involved, even though plaintiff had informed officers that his cellmate was "crazy," does not indicate that defendants were aware of a serious risk); *Blanchard v. Gallick*, 448 F. App'x 173 (3d Cir. 2011) (summary judgment was proper because defendants did not act with deliberate indifference after plaintiff received two threats from his cellmate and was moved to a different cell, after having been previously attacked by a different cellmate); *Blackstone v. Thompson*, 568 F. App'x 82 (3d Cir. 2014) (affirming summary judgment because the inmate failed to show that corrections officers both knew of and were deliberately indifferent to an excessive risk to his safety, where there were no longstanding, pervasive, well-documented or previously noted tensions between prisoner and his cellmate). Furthermore, in cases where there was a direct threat against an inmate by a fellow inmate, the Third Circuit has found insufficient evidence that the corrections officers were deliberately indifferent to a substantial risk. *See Freeman v. Miller*, 615 F. App'x 72 (3d Cir. 2015) (summary judgment was proper in finding that corrections officers were not deliberately indifferent when they issued a disciplinary warning to prisoner after said prisoner told them he would stab his cellmate, but the officers took no further action to prevent the eventual attack that occurred).

In an attempt to establish that Defendants were aware that Montanez's safety was at risk, Montanez submitted a declaration from a fellow inmate. (Doc. 85, p. 45). The inmate declares that he overheard Montanez inform Hannon and Reed that he was having "trouble" with his cellmate, and that Montanez was advised to search for another cellmate and discuss his concerns with the Unit Manager. (*Id.*). The Court finds that this declaration does not establish that Defendants were actually aware of a "substantial risk of serious harm" to Montanez's health or safety. Montanez only made one, generalized complaint with respect to inmate Scuderi, which fails to establish that Defendants were aware of a serious threat to Montanez's safety. See *Wise v. Ranck*, 340 F. App'x 765, 766-7 (3d Cir. 2009) (affirming the district court's grant of summary judgment in favor of defendants where the plaintiff alleged that he "did not get along" with his cellmate, who "had a year-long history of 'antisocial territorial issue[s]'" but did not have a history of violence or attacking cellmates, and finding that this evidence fell "well short of knowing that [plaintiff] faced a substantial risk of serious physical harm at the hands of his cellmate").

The record before the Court reflects that Montanez did not have any prior altercations or confrontations with Scuderi, and there is no indication that Scuderi had a propensity for specifically assaulting his cellmates. In fact, inmate Scuderi never assaulted another inmate before this incident and did not have a history of violence. (Doc. 82, ¶ 16; Doc. 84-1, p. 45, Question Number 5). There is no evidence of any longstanding,

17

pervasive, or well-documented tensions between Montanez and his former cellmate. The Court thus finds that the summary judgment record is void of any evidence that establishes that Defendants were deliberately indifferent to Montanez's safety. Defendants may have acted negligently, at best, but not with deliberate indifference. See Knox v. Doe, 487 F. App'x 725, 727 (3d Cir. 2012) ("[D]eliberate indifference describes a state of mind more blameworthy than negligence") (citation omitted). Accordingly, Defendants Hannon and Reed will be granted summary judgment on the Eighth Amendment claim against them.

### C.    Qualified Immunity

Defendants invoke the defense of qualified immunity in their summary judgment motion. (Doc. 83, pp. 10-12). "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (internal quotation marks omitted). "Qualified immunity balances two important interests - the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson, 555 U.S. at 231. It "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986). "Thus, so long as an official reasonably believes that his conduct complies with the law, qualified immunity

will shield that official from liability." *Sharp*, 669 F.3d at 159 (citing *Pearson*, 555 U.S. at 244). Although qualified immunity is generally a question of law that should be considered at the earliest possible stage of proceedings, a genuine dispute of material fact may preclude summary judgment on qualified immunity. *Giles v. Kearney*, 571 F.3d 318, 325–26 (3d Cir. 2009).

A qualified immunity determination involves a two-pronged inquiry: (1) whether a constitutional or federal right has been violated; and (2) whether that right was "clearly established." *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part by Pearson*, 555 U.S. at 236 (permitting federal courts to exercise discretion in deciding which of the two *Saucier* prongs should be addressed first). Because there are no genuine issues of fact as to whether a constitutional or federal right has been violated, Defendants' motion will be granted on this ground.

## V. Conclusion

For the reasons set forth above, Defendants' motion for summary judgment will be granted. (Doc. 81). A separate Order shall issue.

Date: September 20, 2017

Robert D. Mariani
United States District Judge

19